IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY, | |
| Plaintiff, | Civil Action File No.: |
| v. | |
| ALL CRANE RENTAL OF GEORGIA, INC., and G.S. CONSTRUCTION, INC., | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Amerisure Mutual Insurance Company ("Amerisure" or "Plaintiff") and pursuant to 28 U.S.C. § 2201(a), brings this Complaint for Declaratory Judgment against All Crane Rental of Georgia, Inc. ("All Crane") and G.S. Construction, Inc. ("GSC"), (collectively, "Defendants"), showing the Court as follows:

1.

Amerisure brings this Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201(a), to determine an actual, present and bona fide controversy between Amerisure and the Defendants as to the parties' respective rights and obligations under insurance policies issued by Amerisure to GSC as relates to claims arising

from a crane accident that occurred on or about April 27, 2020 during work on the Allen Wilson Storm Drainage Project (the "Project") located at 1450 Commerce Drive in Decatur, DeKalb County, Georgia.

## JURISDICTION, VENUE, AND PARTIES

### 2.

Amerisure is a foreign insurance company organized, existing, and doing business under the laws of the State of Michigan with its principal place of business located at 2677 Halsted Road, Farmington Hills, Michigan 48333-2060. Amerisure is authorized to conduct business in the State of Georgia.

### 3.

Defendant All Crane is a Georgia corporation with its principal place of business located at 485 Riverside Parkway, Austell, Cobb County, Georgia 30168. It is therefore subject to the jurisdiction and venue of this Court. All Crane may be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.

### 4.

Defendant GSC is a Georgia corporation with its principal place of business located at 526 Lyle Circle, Lawrenceville, Gwinnett County, Georgia 30046. It is therefore subject to the jurisdiction and venue of this Court. GSC can be served

through its registered agent, Alessandro V. Salvo, at 526 Lyle Circle, Lawrenceville, Georgia 30046.

5.

Venue is proper in this Court pursuant to 28 U.S.C. § 1332 (b)(1), (b)(2), (c)(2), and (d), because a substantial part of the events or omissions giving rise to the subject claim occurred within Dekalb County, Georgia which is situated within the Northern Judicial District of Georgia.

6.

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a), because there is complete diversity of citizenship between the parties and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

**THE POLICIES**

7.

Amerisure issued policy no. CPP 20981540402 to GSC effective August 13, 2019 through August 13, 2020 which includes commercial general liability coverage (the "CGL Policy"). A true and accurate copy of the CGL Policy (with premiums redacted) is attached hereto as **Exhibit A**.

8.

Amerisure also issued policy no. CU 20981530402 to GSC effective August 13, 2019 through August 13, 2020, which lists the CGL Policy as underlying general liability coverage (the "Umbrella Policy"). A true and accurate copy of the Umbrella Policy (with premiums redacted) is attached hereto as **Exhibit B**. The declaratory judgment action is limited to the commercial general liability coverage part of the CGL Policy and Umbrella Policy.

9.

The CGL Policy contains the following Insuring Agreement in CGL Coverage *Form CG 00 01 04 13*:

**COVERAGE A - … PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for … "property damage" to which this insurance does not apply. …

    **b.**  This insurance applies to … "property damage" only if:

        **(1)**  The … "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**  The … "property damage" occurs during the policy period; …

- 4 -

10.

The CGL Policy contains Additional Insured Endorsement *CG 70 48 10 15*,

which provides:

**1. a. SECTION II -WHO IS AN INSURED** is amended to add as an additional insured any person or organization:

    **(1)** Whom you are required to add as an additional insured on this policy under a written contract or written agreement relating to your business; or

    **(2)** Who is named as an additional insured under this policy on a certificate of insurance.

  **b.** The written contract, written agreement, or certificate of insurance must:

    **(1)** Require additional insured status for a time period during the term of this policy; and

    **(2)** Be executed prior to the … "property damage" … leading to a claim under this policy.

**2.** The insurance provided under this endorsement is limited as follows:

  **a.** That person or organization is an additional insured only with respect to liability caused, in whole or in part, by:

    …

    **(2)** Ongoing operations performed by you or on your behalf. …

    …

    However, the insurance afforded to such additional insured only applies to the extent permitted by law.

. . .

  **g.** The insurance provided to the additional insured does not apply

to … "property damage" … arising out of an architect's, engineer's, or surveyor's rendering of, or failure to render, any professional services, including but not limited to:

**(1)** The preparing, approving, or failing to approve:

    **(a)** Maps;

    **(b)** Drawings;

    **(c)** Opinions;

    **(d)** Reports;

    **(e)** Surveys;

    **(f)** Change orders;

    **(g)** Design specifications; and

**(2)** Supervisory, inspection, or engineering services.

**h.** **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, paragraph **4. Other Insurance** is deleted and replaced with the following:

    **4.** **Other Insurance.**

    Coverage provided by this endorsement is excess over any other valid and collectible insurance available to the additional insured whether:

    **a.** Primary;

    **b.** Excess;

    **c.** Contingent; or

    **d.** On any other basis;

    but if the written contract, written agreement, or certificate of insurance requires primary and noncontributory coverage, this insurance will be primary and non-contributory relative to other insurance available to the additional insured which covers that person or organization as a Named Insured, and we will not share with that other insurance.

. . .

11.

The CGL Form *CG 00 01 04 13* contains the following relevant Coverage A

exclusions and modifications in Form *CG 70 49 04 17*:

**2.   Exclusions**

This insurance does not apply to:

. . .

**a.   Expected or Intended Injury**

… "property damage" expected or intended from the standpoint of the insured. …

**b.   Contractual Liability**

… "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**   That the insured would have in the absence of the contract or agreement; …

. . .

**j.   Damage to Property**

"Property damage" to:

(1)   Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

. . .

(5)   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

**k.   Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it …

**l.   Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply:

**(1)** if the damaged work or the work out of which your damage arises was performed on your behalf by a subcontractor; …

**m.   Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

12.

The CGL Policy contains the following Professional Liability Exclusion in

*Form CG 22 43 04 13*:

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – … Property Damage Liability …**:

This insurance does not apply to … "property damage" … arising out

of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**2.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the … "property damage" … involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

13.

The CGL Policy contains the following Professional Liability endorsement in

*Form CG 22 79 04 13*:

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – … Property Damage Liability …**:

**1.** This insurance does not apply to … "property damage" … arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

    **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

    **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the … "property damage" … involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

**2.**   Subject to Paragraph 3. below, professional services include:

    **a.**   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    **b.**   Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.**   Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

14.

The CGL Policy the following Property Damage Liability Limit in *Form CG 70 49 04 17*:

Under **SECTION I – COVERAGE A. … PROPERTY DAMAGE LIABILITY,** paragraph **2. EXCLUSIONS,** provisions **1.** through **6.** of this endorsement are excess over any valid and collectible insurance (including any deductible) available to the insured, whether primary, excess or contingent … Provisions **1.** through **6.** of this endorsement amends the policy as follows:

. . .

**3.**   **PROPERTY DAMAGE LIABILITY – PROPERTY LOANED TO THE INSURED OR PERSONAL PROPERTY IN THE CARE, CUSTODY AND CONTROL OF THE INSURED**

    …

**B.** Coverage under this provision **3.** does not apply to "property damage" that exceeds $25,000 per occurrence or $25,000 annual aggregate.

15.

The CGL Form *CG 00 01 04 13* contains the following relevant definitions:

## SECTION V – DEFINITIONS

. . .

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement.

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**16.** "Products-completed operations hazard":

**a.** Includes all … "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

. . .

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or

        equipment furnished in connection with such goods or products.

**b.**    Includes

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

. . .

**22.**    "Your work":

    **a.**    Means:

    **(1)**    Work or operations performed by you or on your behalf; and

    **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)**    The providing of or failure to provide warnings or instructions.

16.

The Umbrella Policy contains the following Insuring Agreement in

Commercial Liability Umbrella Coverage Form *CU 00 01 04 13*:

### COVERAGE A - … PROPERTY DAMAGE LIABILITY

**1.**    **Insuring Agreement**

    **a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of … "property damage" to which this insurance applies. We will have the

right and duty to defend the insured against any "suit" seeking damages for such … or "property damage" when the "underlying insurance" does not provide coverage or the limits of the "underlying insurance" have been exhausted When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for … or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. …

**b.** This insurance applies to … "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to … "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

**c.** This insurance applies to … "property damage" only if:

**(1)** The … "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The … "property damage" occurs during the policy period;

…

17.

The Umbrella Coverage Form *CU 00 01 04 13* contains the following relevant Coverage A exclusions with some modifications in Form *CU 71 01 04 17*:

**2.  Exclusions**

This insurance does not apply to:

### a. Expected Or Intended Injury

… "property damage" expected or intended from the standpoint of the insured. …

### b. Contractual Liability

… "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

. . .

### m. Damage to Property

"Property damage" to:

**(1)** Property:

    **(a)** You own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; …

…

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

…

### s. Professional Services

… "property damage" due to rendering of or failure to render any professional service. This includes but is not limited to:

. . .

**(2)**  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

**(3)**  Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;

**(4)**  Engineering services, including related supervisory or inspection services;

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the … "property damage" … involved the rendering of or failure to render any professional service.

18.

The Umbrella Policy contains the following Property Damage Liability Limit

in *Form CU 71 01 04 17*:

**2.  PROPERTY DAMAGE LIABILITY – PROPERTY LOANED TO THE INSURED OR PERSONAL PROPERTY IN THE CARE, CUSTODY AND CONTROL OF THE INSURED**

…

Coverage under this provision **2.** does not apply to "property damage" that exceeds $25,000 per occurrence or $25,000 annual aggregate.

19.

The Umbrella Coverage Form *CU 00 01 04 13* contains the following relevant definitions:

## SECTION V – DEFINITIONS

**17.**  "Products-completed operations hazard":

    **a.**  Includes all … "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**  Products that are still in your physical possession; or

        **(2)**  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**  When all of the work called for in your contract has been completed.

            **(b)**  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

            Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    …

**18.**  "Property damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**  Loss of use of tangible property that is not physically

injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

19. "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations …

…

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

…

28. "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties and representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

### **Factual Background Related to the Project and Crane**

20.

On May 6, 2019 the City of Decatur's engineers were provided with a geotechnical exploration report for the Project site which states "a void beneath the

existing pavement was observed at Boring B-13 that extended generally north toward the Decatur Management Services building" and "[p]avement cracks were observed in several locations of the parking lot, but no noticeable settlement or sagging of the pavement [sic] apparent." GSC had a copy of the geotechnical exploration report by April 14, 2020 at the latest.

21.

On February 6, 2020, the City of Decatur hired GSC to perform work on the Project. Upon information and belief, there is no signed agreement between the City of Decatur and GSC for work on the Project,

22.

On February 12, 2020, a pre-construction meeting took place, and GSC's notes from that meeting provided there were "concerns About Void underneath parking lot & Staging" and that GSC should "Ensure machinery does not ride on or over void it may cause collapse." The notes also state that GSC "discussed potential to store equipment on local church property."

23.

On April 6, 2020, GSC requested a "rental quote" from All Crane for a 200-ton crane to set up large concrete culverts for the Project. GSC selected the date of April 27, 2020 for the crane and provided All Crane with specifications for the

Project.

24.

All Crane provided GSC with an "Equipment Rental Quote" which sets out an hourly rate for the crane and states that GSC will "rig and flag crane." The Equipment Rental Quote contains a fuel surcharge and references an operator. The "Equipment Rental Quote" refers to GSC as the "Lessee" and states that GSC:

is required to execute our standard form of Equipment Rental Agreement …

is responsible for providing rigging and qualified signal person(s) and rigger(s) …

is responsible for ensuring that we have sufficient access to and from the jobsite and an adequate area for delivery and pick-up of equipment component parts.

is required to inspect and prepare jobsite conditions in accordance with OSHA regulations, and provide firm, level and stable area(s) upon which the equipment (and any assist crane) will be assembled/disassembled (if applicable) and operated (to support equipment and load weight) … [and] is required to determine and disclose to us the existence of any buried utility lines, tunnels, bridges, vaults, or any other underground or hidden conditions on the jobsite.

is responsible for any required crowd and/or traffic control measures, street permits, barricades, re-routing of traffic, flagmen, lighting, utilities control, and procuring at its own expense all necessary permits and clearances required in connection with the foregoing, as well as complying with all FAA laws and regulations.

is required to arrange and pay the cost of any special inspections or certifications with respect to the equipment, and any required training, orientation, and/or testing of our employees, required for the project or jobsite.

[will] provide an onsite foreman/supervisor to supervise and control all [GSC]-provided laborers.

A true and accurate copy of the "Equipment Rental Quote" is attached as **Exhibit E**.

25.

On April 27, 2020, All Crane delivered the crane to the Project. Around 4:55pm EST that afternoon, the ground under the crane collapsed, creating a large hole in the parking lot at the Project and damaging the crane.

26.

On May 8, 2020, GSC met with City of Decatur representatives and their engineers. Notes from that meeting provide that (1) GSC agreed to perform or have performed ground penetrating radar on the Project and (2) GSC was required to provide an as-built survey of the parking lot prior to construction but did not. GSC advised that the survey was scheduled for May 11, 2020, and that they would provide the as-built survey in the future.

**The Claims and Counterclaims in the Underlying Litigation**

27.

On July 22, 2020, All Crane filed a Complaint against GSC for breach of contract and express indemnity, negligence, negligent misrepresentation, and expenses of litigation in the Superior Court of Dekalb County, Georgia, Case No. 20CV5265 (the "Underlying Litigation"). A copy of All Crane's Complaint is

- 21 -

attached hereto as **Exhibit C**.

28.

On September 14, 2020, GSC answered the Complaint in the Underlying Litigation and filed a counterclaim against All Crane for breach of contract, breach of warranty, negligence, inceptive fraud, and attorneys' fees and litigation expenses. A copy of GSC's Answer and Counterclaim is attached hereto as **Exhibit D**.

29.

Amerisure is currently defending GSC for the claims made by All Crane in the Underlying Litigation, including retaining defense counsel for GSC, subject to a reservation of rights.

30.

Amerisure is in doubt as to the duties it owes to GSC as an insured for the claims against it in the Underlying Litigation by All Crane.

31.

The Complaint by All Crane against GSC alleges:

> [GSC employee Amanda Barr] instructed [All Crane operator David Peck] to park the crane and then signed the Job Ticket and Equipment Rental Agreement Terms and Conditions. …

> In entering Equipment Rental Agreement, [GSC], as Lessee, was required to fully and timely comply with "all applicable laws, statutes, codes, ordinances, rules, and regulations, and industry standards, including those promulgated by the Occupational Safety & Heath Administration, 29 CFR

Subpart CC Cranes and Derricks in Construction Sections 1926.1400-1926.1442 ("OSHA") …

In entering Equipment Rental Agreement, [GSC], as Lessee, was required to inspect and prepare (at its own expense) the Project site, including ground, soil, topography, and paved areas as necessary to provide a firm, drained, level area sufficient in size and compaction to support the crane under load conditions. …

In entering Equipment Rental Agreement, [GSC], as Lessee, was required to determine the existence of any buried utility lines, tunnels, bridges, vaults, tanks, or any other underground or hidden hazards or conditions on the Project site and disclose same to All Crane. …

In entering Equipment Rental Agreement, [GSC], as Lessee, was required to provide Project site supervision in accordance with the requirements in applicable Laws. …

In entering Equipment Rental Agreement, [GSC], as Lessee, was required to exercise complete supervision and control over [GSC], its contractors, subcontractors, and their respective employees, agents and/or representatives and [GSC] agreed that such personnel were not borrowed servants of ALL Crane or otherwise under ALL Crane's supervision and control. …

In entering Equipment Rental Agreement, [GSC], as Lessee, was required to provide qualified riggers and all rigging as well as a competent, qualified and experienced signal person in accordance with applicable laws to direct the operations of the crane and provide accurate, timely and complete instructions and signals to the crane operator. …

In entering Equipment Rental Agreement, [GSC], as Lessee, was required to provide overall jobsite safety for ALL Crane. …

After [GSC Project Manager Steve Zook] directed Mr. Peck as to the location of the work area where the culverts would be placed with the crane . . . the crane was positioned to begin placing culverts under [GSC's] direction.

In crossing the subject parking lot to access the work area, the crane traversed the area where the ground collapsed later that same day.

Mr. Zook directed and supervised Mr. Peck's use of the crane and [GSC's] crew rigged the culverts on the crane hook and signaled Mr. Peck in placing culverts for [GSC's] storm drainage work on the Project.

After Mr. Peck utilized the crane to offload four truckloads of culverts. [GSC] informed him that they were finished with work for the day. …

[GSC] and Mr. Zook authorized Mr. Peck to park the crane in the subject parking lot for the night. …

[GSC's] employees also used [GSC's] equipment to move the crane's steel mats to the area where the crane would be parked for the night.

Around 4:55pm while the crane was being operated across the subject parking lot toward its designated parking area for the night, the ground surface under the crane suddenly and without warning collapsed and the crane tipped onto its side.

… [T]he crane became wedged in a hole in the ground that was approximately 40 feet long, 21 feet wide and varied in depth from six to ten feet. …

… [T]he crane was fully removed from the work site on June 25, 2020. …

… [T]he subject parking lot was previously closed to vehicle use due to unstable subsurface conditions.

[GSC] and its employees knew or should have known that the subject parking lot was previously closed to vehicle use due to subsurface conditions. …

… [GSC] knew or should have known that there were failing pipes under the subject parking lot that caused the City of Decatur concern for a potential dropout of collapse in the subject parking lot. …

… [GSC] knew or should have known that there was a void beneath the existing pavement in the subject parking lot where the crane was being operated on April 27, 2020.

## COUNT I – DECLARATORY JUDGMENT
## NO DUTY TO DEFEND G.S. CONSTRUCTION

32.

Amerisure incorporates the allegations set forth in Paragraphs 1 through 31 as if fully set forth herein.

33.

Amerisure seeks a declaratory judgment against GSC, and for this Court to declare the rights, status, and such other equitable or legal relations between the parties involving the CGL Policy and Umbrella Policy, pursuant to 28 U.S.C. §§ 2201 and 2202, *et seq.* and/or O.C.G.A. § 9-4-2, *et seq.*

34.

Amerisure is in a position of doubt and uncertainty as to its rights and obligations with regard to the claims asserted against GSC by All Crane, and a bona fide dispute has arisen concerning the rights and obligations of the parties under the CGL Policy and Umbrella Policy.

35.

The claims against GSC by All Crane do not allege an "occurrence" as that term is defined in the CGL Policy and Umbrella Policy.

36.

The claims against GSC by All Crane allege damages that fall entirely within

exclusion **a. Expected Or Intended Injury** in the CGL Policy and Umbrella Policy, including damages expected or intended from the standpoint of GSC.

37.

The claims against GSC by All Crane allege damages related to breach of contract or express indemnity under the Equipment Rental Agreement that fall entirely within exclusion **b. Contractual Liability** in the CGL Policy and Umbrella Policy, including damages for breach of contract, express indemnity, and economic loss to All Crane.

38.

The claims against GSC by All Crane allege damages that fall entirely within exclusion **j.(1) Damage To Property** in the CGL Policy and exclusion **m.(1) Damage To Property** in the Umbrella Policy and are subject to the property damage liability limit of $25,000 in both policies, as All Crane alleges damages to property, specifically the crane, that GSC rented. This exclusion also eliminates damages for any costs or expenses incurred by GSC, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

39.

The claims against GSC by All Crane allege damages that fall entirely within the exclusions for professional liability contained in the CGL Policy's endorsements *CG 22 43 04 13* and *CG 22 79 04 13*, as any "property damage" would arise out of GSC or an engineer's rendering or failure to render professional services, including GSC or an engineer's rendering or failure to provide engineering or surveying services related to the void in the parking lot where the crane fell.

40.

The claims against GSC by All Crane allege damages that fall entirely within exclusion **s. Professional Services** in the Umbrella Policy, as any "property damage" would arise out of GSC or an engineer's rendering or failure to provide engineering or inspection services related to the void in the parking lot where the crane fell.

**WHEREFORE**, Amerisure respectfully requests entry of a declaratory judgment finding and declaring that (1) the CGL Policy and Umbrella Policy do not provide coverage to GSC for the claims by All Crane; (2) Amerisure has no duty to defend GSC for the claims by All Crane in the Underlying Litigation; and (3) any other relief this Court deems just and proper.

## COUNT II – DECLARATORY JUDGMENT
## NO DUTY TO INDEMNIFY G.S. CONSTRUCTION

41.

Amerisure incorporates the allegations set forth in Paragraphs 1 through 40 as if fully set forth herein.

42.

Amerisure seeks a declaratory judgment against GSC, and for this Court to declare the rights, status, and such other equitable or legal relations between the parties involving the CGL Policy and Umbrella Policy, pursuant to 28 U.S.C. §§ 2201 and 2202, *et seq.* and/or O.C.G.A. § 9-4-2, *et seq.*

43.

Amerisure is in a position of doubt and uncertainty as to its rights and obligations with regard to the claims asserted against GSC by All Crane, and a bona fide dispute has arisen concerning the rights and obligations of the parties under the CGL Policy and Umbrella Policy.

44.

The true facts of the claims against GSC by All Crane show that there is no "occurrence" as that term is defined in the CGL Policy and Umbrella Policy.

45.

The true facts of the claims against GSC by All Crane show that exclusion **a.**

**Expected Or Intended Injury** in the CGL Policy and Umbrella Policy would eliminate coverage, including damages expected or intended from the standpoint of GSC.

46.

The true facts of the claims against GSC by All Crane show that damages sought by All Crane fall entirely within exclusion **b. Contractual Liability** in the CGL Policy and Umbrella Policy, including damages for breach of contract, express indemnity, and economic loss to All Crane.

47.

The true facts of the claims against GSC by All Crane show that damages sought by All Crane fall entirely within exclusion **j.(1) Damage To Property** in the CGL Policy and exclusion **m.(1) Damage To Property** in the Umbrella Policy and are subject to the property damage liability limit of $25,000 in both policies, as All Crane alleges damages to property GSC rented, including the crane. This exclusion also eliminates damages for any costs or expenses incurred by GSC, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

48.

The true facts of the claims against GSC by All Crane show that damages sought by All Crane fall entirely within the exclusions for professional liability contained in the CGL Policy's endorsements *CG 22 43 04 13* and *CG 22 79 04 13*, as any "property damage" would arise out of GSC or an engineer's rendering or failure to render professional services, including GSC or an engineer's rendering or failure to provide engineering or surveying services related to the void in the parking lot where the crane fell.

49.

The true facts of the claims against GSC by All Crane show that damages sought by All Crane fall entirely within exclusion **s. Professional Services** in the Umbrella Policy, as any "property damage" would arise out of GSC or an engineer's rendering or failure to provide engineering or inspection services related to the void in the parking lot where the crane fell.

**WHEREFORE**, Amerisure respectfully requests entry of a declaratory judgment finding and declaring that (1) the CGL Policy and Umbrella Policy do not provide coverage to GSC for the claims by All Crane; (2) Amerisure has no duty to indemnify GSC for the claims by All Crane; and (3) any other relief this Court deems just and proper.

This 6th day of October, 2022.

> Goodman McGuffey LLP
> Attorneys for
> Amerisure Mutual Insurance Company
>
> By:     */s/ Stephanie F. Glickauf*
>         STEPHANIE F. GLICKAUF
>         GA State Bar No.  257540
>         sglickauf@GM-LLP.com
>         3340 Peachtree Road NE, Suite 2100
>         Atlanta, GA 30326-1084
>         (404) 264-1500 Phone
>         (404) 264-1737 Fax